The Honorable Bob Johnson State Senator P.O. Box 130 Morrilton, AR 72110
Dear Senator Johnson:
I am writing in response to your request for an opinion on several questions concerning insurance premiums tax monies that have been received by the City of Plumerville ("the City"). You state that the City has not had a police officer in the Arkansas Local Police and Fire Retirement System ("LOPFI") since November of 1994, when the only officer who has ever been a member of LOPFI resigned. You state further that the City has, however, received a check for the police pension fund from turnback insurance taxes every year for the past five years.
Your specific questions in this regard are as follows:
 1. Is the City legally entitled to receive police turn back insurance tax funds? If so, can the City use this money for any purpose other than police retirement?
2. If the city is not legally entitled to these funds:
 A. Must the City return the money? If so, to what agency should the funds be returned and into what fund should the funds be deposited? Must the City return only the fees it has received or must the City return the fees and the interest the funds have accumulated? If the City can keep the interest, are there any restrictions on its use?
 B. How can the City of Plumerville be removed from the permanent certification list for police turn back insurance tax funds?
RESPONSE
It is my opinion that the answer to these questions may require factual determinations that are outside the scope of an opinion from this office. As a general matter, however, it is my opinion that the City's eligibility to participate in the distribution of insurance turnback funds, i.e., revenues received from taxes levied on foreign and domestic insurers under Arkansas statutes, was continuous from the time the City covered its police department under LOPFI unless otherwise directed by the Board of Trustees ("Board"). Assuming that the Board did not in fact direct otherwise, then in my opinion the City was entitled to receive the funds and it may either use the funds for police retirement or transfer the excess to its fire pension fund. I have found no provision of law establishing or requiring a procedure for a city to be removed from the certification list for turnback funds. I assume, however, that the LOPFI Board would direct the removal if notified by the City.
Question 1 — Is the City legally entitled to receive police turnback insurance tax funds? If so, can the City use this money forany purpose other than police retirement?
It is my opinion that the answer to the first part of this question will depend upon what, if any, action was taken by the LOPFI Board of Trustees with respect to the City's certification to receive the insurance turnback revenues. In accordance with A.C.A. § 24-11-302, "each city or town which covers its police department under the Arkansas Local Police and Fire Retirement System shall be qualified to participate in the distribution of the [turnback] funds. . . ." A.C.A. § 24-11-302 (a) (Repl. 1996).[1] Subsection (d) of § 24-11-302 stated further as follows:
 (d)(1) For each city or town which covers its entire police department under the Arkansas Local Police and Fire Retirement System, the board of trustees shall provide certification to the Insurance commissioner on or before December 15 of the calendar year in which coverage began.
 (2) The eligibility of the cities or towns shall be continuous without recertification, unless otherwise directed by the board of trustees.
It seems clear, therefore, that the City was qualified to receive the funds when it began to cover its police officer under LOPFI. See also
A.C.A. § 24-10-409 (d) (Repl. 1996) (stating that "[e]ach political subdivision without a relief fund in effect on July 1, 1981, which subsequently covers its fire or police department under the system shall also receive insurance revenues.")[2] Presumably certification was provided to the Insurance Commissioner at that time confirming the City's eligibility. Under the existing statutory scheme, recertification was unnecessary as it was "continuous" unless the Board directed otherwise. A.C.A. § 24-11-302 (d) (2), supra. Although it is not entirely clear, I believe it reasonably follows from the language of this provision that the City remained certified and thus eligible to receive the turnback insurance funds unless and until the Board directed the Insurance Commissioner otherwise. I recognize that undoubtedly the intent of the turnback distribution is to provide support for officers covered under LOPFI. However, I have found no provision of law, either express or implicit, that would have required the City to take steps to remove its eligibility or to decertify itself after the officer resigned his position. Nor am I aware of any rule or regulation imposing such a requirement.
I thus conclude, in the absence of a decertification procedure, and in light of the continuing nature of the certification, that the City was legally entitled to receive the insurance turnback as long as the Board provided no other directions regarding the City's eligibility.
In response to the second part of this question concerning the use of the funds, it is my opinion that these "excess moneys" may be used for police or fire retirement in accordance with A.C.A. § 24-10-409 (e), which provides as follows:
 All moneys so received by the political subdivisions shall be applied to the employer contribution required to support this system, provided however, if the governing body of any political subdivision determines that the required employer contribution is less than the amount of moneys so received during the year, the governing body may transfer any or all of the excess moneys to their police pension funds or fire pension funds, or both, in whatever amount deemed appropriate.
Section 24-10-409 provides for the proration of insurance turnback revenues between the relief funds of political subdivisions, and the political subdivisions themselves. A.C.A. § 24-10-409 (b) (1). It provides further that the insurance revenues will also go to any political subdivision that did not have a relief fund in effect on July 1, 1981, and that subsequently covers its fire or police department under LOPFI. A.C.A. § 24-10-409 (d). It is my understanding that this latter provision applies in the case of Plumerville. As required by § 24-10-409 (e), above, these revenues must be applied to the employer contribution required to support LOPFI. If, however, this required contribution is less than the turnback, then any or all of these so-called "excess moneys" may be transferred as authorized. Because Plumerville, according to my understanding, has a fire pension fund but not a police pension fund, I believe its option would be to transfer the funds to its fire pension fund.
I have found no other provision of law governing the disposition of excess insurance turnback funds under these circumstances.
Question 2 — If the City is not legally entitled to these funds:
 A. Must the City return the money? If so, to what agency should the funds be returned and into what fund should the funds be deposited? Must the City return only the fees it has received or must the City return the fees and the interest the funds have accumulated? If the City can deep the interest, are there any restrictions on its use?
 B. How can the City of Plumerville be removed from the permanent certification list for police turn back insurance tax funds?
Because it is my opinion, as discussed above, that the City in all likelihood is entitled to keep the funds it has received, a response to the first part of this question is unnecessary. With regard to the City's removal from the certification list, it is my understanding that the City is no longer on the list. The City may wish, however, to contact the Department of Finance and Administration for confirmation. Following the 1991 amendments (see n. 1, supra), certification is to be made to DFA rather than the Insurance Commissioner.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] Section 24-11-302 was rewritten in 1999. See Acts 1999, No. 1570, codified at A.C.A. § 24-11-302 (Supp. 1999). (It was also amended in 2001 by several acts that are not relevant to this opinion.) According to the information I have been able to gather, the 1999 amendments do not apply to any of the allocations made to the City of Plumerville. The 2001 distribution will be the first covered by the amendments. See A.C.A. §24-11-302 (e) (Supp. 1999) (governing certification "[s]ubsequent to the year 2000."). It is my understanding that Plumerville is not on the December, 15, 2000, certification list for the 2001 distribution.
[2] It is my understanding that the City of Plumerville does not have a local relief fund and did not have such a fund on July 1, 1981, the operative date of LOPFI.